UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DEVERE SEABROOK,

                    Petitioner,

          -against-

WILLIAM A. LEE, Superintendent,
Greenhaven Correctional Facility,

                    Respondent.
---------------------------------X

**MEMORANDUM & ORDER**

11-CV-4449 (KAM)

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

          Petitioner Devere Seabrook ("petitioner"), who is
incarcerated pursuant to a judgment of conviction imposed in the
New York State Supreme Court in Kings County, seeks a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1,
Petition ("Pet.") at 1.)  Specifically, petitioner asserts that
he was deprived of his due process right to present a defense in
violation of the United States Constitution.  For the reasons
set forth below, the petition is denied.

**BACKGROUND**

**I.   Petitioner's Indictment**

          Pursuant to Kings County Indictment Number 6146/2004,
petitioner was indicted for events that occurred on August 4,
2004.  (ECF No. 5, Affidavit in Opposition to Petition for a
Writ of Habeas Corpus ("Gov't Opp.") at 3.)  Petitioner was
specifically indicted with Attempted Murder in the Second Degree
(N.Y. Penal Law § 110/125.25(1)), Assault in the First Degree

(N.Y. Penal Law § 120.10(1)), two counts of Assault in the
Second Degree (N.Y. Penal Law § 120.05(2)), two counts of
Burglary in the First Degree (N.Y. Penal Law § 140.30(1), (2)),
Burglary in the Second Degree (N.Y. Penal Law § 140.25(2)),
Criminal Trespass in the Second Degree (N.Y. Penal Law §
140.15), Attempted Robbery in the First Degree (N.Y. Penal Law §
110/160.15(2)), and one count each of Criminal Possession of a
Weapon in the Second, Third, and Fourth Degree (N.Y. Penal Law
§§ 265.03(2), 265.02(4), 265.01(1)).  (*Id.*)

## II.  Petitioner's 2005 Trial

Petitioner's trial commenced on June 21, 2005.

### A.  The People's Case

On or around August 1st, 2004, Heather Luces ("Luces")
and her son Jeffrey Britt ("Britt"), the complaining witnesses,
testified that they attended a barbecue hosted by Roy Seabrook
("Roy"), the petitioner's uncle.  (ECF Nos. 5-1, 2, 3, 4, 5, Tr.
of State Court Trial ("Tr.") at 66-70, 165-66.)  At the
barbecue, the complaining witnesses met the petitioner.  (Tr. at
68.)  Luces testified that although she and Britt did not speak
to petitioner, they did discuss, in petitioner's presence,
Britt's recent inheritance.  (Tr. at 66-70, 165-66.)  Britt
testified that he inherited about $30,000 from his great
grandmother, Luces' grandmother.  (Tr. at 164-65.)  Luces,
however, could not recall how much was inherited by Britt.  (Tr.

2

at 91-92.)  At the time of the incident, Britt still had $12,000 left, in cash, in the apartment that he shared with his mother. (Tr. at 189-91.)

Luces and Britt both testified to essentially the same subsequent chain of events.  They testified that on August 4, 2004, Luces was entering her apartment when three men with guns and shirts over their faces forced their way into the apartment. (Tr. at 56.)  When Britt heard the commotion he came out of his room and was subsequently shot in the thigh by one of the assailants.  (Tr. at 56,155.)  Two of the assailants then ran out of the apartment while the third was tackled by Britt.  (Tr. at 61, 158.)  As the two were wrestling on the floor, Luces attacked the assailant with scissors, stabbing him in the right shoulder.  (Tr. at 61, 159.)  The assailant then took the scissors from Luces and proceeded to stab her in the arm and Britt in the head.  (Tr. at 62, 159-60.)  During the course of the struggle, the t-shirt that the assailant was using to cover his face came off.  (Tr. at 63.)  Luces and Britt were able to see the attacker's face and were able to later identify him as petitioner.  (Tr. at 64, 161-62.)  The police officers who responded to the crime scene did not testify that they found drugs or drug paraphernalia at the scene.  (*See, e.g.*, Tr. at 255-57, 343-44, 382-87.)

New York City Police Department ("NYPD") Detective Raymond Holzwarth ("Detective Holzwarth") testified that on August 15, 2004, a man who identified himself as petitioner called him stating that he heard they were looking for him and that he was out of state but would go to the precinct in a few days. (Tr. at 270.) A month later, the police received an anonymous tip that the petitioner was in Virginia. (Tr. at 223, 273.)

On September 23, 2004, Detective Holzwarth and NYPD Detective Walton Richardson went to Virginia to retrieve the petitioner. (Tr. at 224.) When questioned about his identity, petitioner responded with a fake name and claimed he was from South Carolina. (Tr. at 226.) After a few minutes, he admitted to his true identity and was subsequently arrested. (Tr. at 226, 228.) Detective Holzwarth testified that on the flight back to New York, petitioner stated that he was "not going to go down alone for it," but did not elaborate. (Tr. at 231, 279.)

**B.   The Defense Case**

On cross-examination of the People's witness, Luces, defense counsel inquired about her possible knowledge and involvement in drug-related transactions. Luces denied seeing any drug transactions in her building, and denied any involvement in drug trafficking with Roy or anyone in the Seabrook family and denied ever selling drugs. (Tr. at 101,

4

140, 143, 145.)  Defense counsel also asked Britt if the $12,000
he told officers was in his apartment was drug money.  (Tr. at
189-92, 293.)  Britt denied selling drugs or knowing petitioner
or Roy before attending the August 1st barbeque.  (Tr. at 192,
211.)

        Petitioner testified at trial that on August 4, 2004,
the day of the incident, he went to Britt's apartment to give
him money for drugs he previously purchased and to obtain drugs
for a different transaction.  (Tr. at 444-45.)  Petitioner
testified that he had an arrangement with Britt that he would go
to his house, get drugs, and the petitioner would sell it in
return for 40% of the deal.  (Tr. at 448.)  While petitioner was
at the apartment, Britt prepared drugs for sale by putting them
into individual baggies.  (Tr. at 450.)  Petitioner testified
that after the drugs were packaged, Britt was going to give him
a ride.  (Tr. at 450.)

        As petitioner and Britt were leaving Britt's
apartment, they were approached by two men with guns and shirts
covering their faces.  (Tr. at 450.)  The men forced their way
into the apartment.  (Tr. at 450.)  Petitioner testified that
Britt started "tussling" with one of the guys with a gun when a
shot was fired.  (Tr. at 451-53; *see also* Tr. at 255 (Police
Detective testimony that a gun, a spent round, a deformed
bullet, and a bullet hole were found at the crime scene).)

5

Petitioner claims that during this whole time he was on the
floor facing down.  (Tr. at 453.)  According to petitioner,
Luces stabbed him and accused him of "setting them up," thereby
falsely implicating petitioner in the assault.  (Tr. at 453-54.)
Petitioner further testified that the money in the apartment was
money the complaining witnesses obtained through their drug
dealing business, not through an inheritance.  Petitioner
claimed no connection with the two assailants and denied
stabbing Luces or Britt, or seeing Luces and Britt getting
stabbed.  (Tr. at 454-55.)  Finally, petitioner testified that
he and Britt had a long-standing drug-dealing relationship.
(Tr. at 458.)

        Petitioner explained that he went to Virginia because
he heard Britt was threatening to kill him, and that on one
occasion Britt chased petitioner into a building with three men.
(Tr. at 459-60.)  Petitioner denied giving the officers a fake
name and trying to conceal his identity.  (Tr. at 460.)  On the
flight back to New York with the detectives, petitioner claimed
that he said "if I'm going to go down for this, I'm not going
down alone, haven't done anything to these people," and that
this meant that he was going to tell the police about the
complaining witnesses' drug business.  (Tr. at 462.)

        After petitioner testified, defense counsel sought to
introduce testimony by Roy that would establish: (1) that Roy

6

invited the complaining witnesses to the barbecue before the assault, (2) that Luces had known Roy for a long time and that they dealt drugs together, and (3) that Luces is a drug dealer. (Tr. at 500.)  Defense counsel argued that the testimony was critical to contradict the complaining witnesses' testimony and to bolster the petitioner's testimony.  (Tr. at 505-06, 510.) According to petitioner, Roy's testimony was important to support petitioner's claim that the complaining witnesses thought that the petitioner set them up by showing that he was at the apartment to buy drugs, and that the $12,000 in the apartment was drug money.  (Tr. at 511-12.)

   The trial court judge concluded that this was an issue in which he had discretion, and that the testimony petitioner sought to elicit through the witness, Roy, was entirely collateral to the issues to be determined at trial.  (Tr. at 507.)  The testimony was seen as immaterial, and the drug dealing claim was dubbed "a red herring" that had nothing to do with the elements of the charged crimes.  (Tr. at 507.)  The trial court allowed the petitioner to call Roy as a witness, but limited defense counsel questions to the barbeque and events that occurred at the hospital.  (Tr. at 501, 503.)  Ultimately, petitioner did not call Roy to the stand.  (*See* Tr. at 514.) Further, the court commented that Roy was present for a majority of the testimony before he was asked to leave and, therefore, he

could be excluded from testifying on this alternative basis. (Tr. at 501-02.)

Following the jury trial, petitioner was convicted of Assault in the First Degree (N.Y. Penal Law § 120.10(1)), Assault in the Second Degree (N.Y. Penal Law § 120.05(2)), and Burglary in the First Degree (N.Y. Penal Law § 140.30(1), (2). (Tr. at 655.)  On July 21, 2005, the court sentenced him to twenty years imprisonment on the conviction for Assault in the First Degree, a five-year consecutive sentence for Assault in the Second Degree, and five years of post-release supervision. (ECF No. 5-5, Sentencing Tr. ("Sentencing") at 28.)[1]

## III. Post-Conviction Proceedings in State Court

The petitioner appealed to the Appellate Division of the New York State Supreme Court, Second Department ("Appellate Division"), on the grounds that he was deprived of his due process right to present a defense when the trial court narrowed the scope of questions that could be asked of defense witness Roy. *People v. Seabrook*, 906 N.Y.S.2d 592 (N.Y. App. Div. 2d Dep't 2010).  On August 10, 2010, the Appellate Division rejected the petitioner's claim and affirmed his conviction. (Gov't Opp. ¶ 9.)  The Appellate Division held that the trial court providently exercised its discretion in precluding certain

---

[1]     The burglary charge was dismissed because the jury received burglary instructions that were not part of the indictment.  (Sentencing at 2.)

testimony from a prospective witness who would have testified to matters collateral to the issue to be determined at trial. (*Id.*)

The petitioner sought leave to appeal to the New York Court of Appeals on the same grounds, and on November 29, 2010, the Court of Appeals denied petitioner leave to appeal further. *People v. Seabrook*, 15 N.Y.3d 924 (2010).

## IV.  The Instant Habeas Petition

On September 12, 2011, the petitioner filed the instant habeas petition, but failed to raise a particular claim. (*See generally* ECF No. 1, Pet.)  Based on his past appeals, however, it would appear that he is claiming that he was denied his due process right to present a defense when the court refused his requests to allow defense witness Roy to testify about his relationship with Luces and drug-dealing.  Indeed, that appears to be the only claim the petitioner has exhausted, which is a prerequisite for habeas relief.  *See* 28 U.S.C. § 2254(b)(1)(A).  Accordingly, petitioner seeks to have his conviction reversed and remanded for new trial.  (Pet. at 15.)  The People oppose the petitioner's claim for habeas relief, arguing that the trial court did not abuse its discretion in denying the defense witness testimony because he would have testified on a collateral matter.  (*See generally* Gov't Opp.)

## STANDARD OF REVIEW

A Section 2254 habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  A habeas petitioner's state remedies are considered exhausted when the petitioner has: "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state.") (internal quotation marks and citation omitted).

Where a claim has been exhausted, the state court's adjudication on the merits is entitled to deference on collateral review, *Channer v. Brooks*, 320 F.3d 188, 195 (2d Cir. 2003); thus, a federal court may only grant habeas relief where

the state court's adjudication of the federal claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., delivering the opinion of the Court as to Part II).  A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  The Supreme Court has emphasized that the reasonableness of the application of federal law is to be assessed objectively rather than subjectively.  *Id.* at 409-10.  This question of whether a state court bases a decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), is not a question of

11

whether the federal court reviewing the record on a habeas petition agrees with the state court's findings, but only whether those findings are reasonable. *Channer*, 320 F.3d at 195. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## DISCUSSION

Here, there is no dispute as to whether the petitioner has exhausted his claim in state court. (*See generally* Pet.; Gov't Opp. at 3-5.) Accordingly, this court need only determine whether, as the petitioner asserts, the state trial court's refusal to allow part of the intended defense witness testimony deprived him of his right to present a defense and right to a fair trial.

To prevail on his habeas petition, petitioner must establish that: "(i) the trial court's improper evidentiary ruling was an error of constitutional magnitude; and (ii) the constitutional error was not harmless." *Perez v. Phillips*, 210 F. Appx 55, 57 (2d Cir. 2006) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988)). In reference to the first prong, whether the improper evidentiary ruling was an error of

constitutional magnitude is determined by a two-step analysis: "(1) whether the exclusion was [made in] error under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial."[2] *Id.* (citing *Dey v. Scully*, 952 F. Supp. 957, 969 (E.D.N.Y. 1997); *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983).

As discussed below, because the court finds that even if there was an error it was not of constitutional magnitude, there is no need to address the second prong of the evidentiary test—whether the constitutional error was harmless.

**V.    Whether the Exclusion Was Made in Error Under State Law**

It is well-settled under both New York and federal law that a witness may not be impeached through extrinsic evidence as to matters that are collateral to the issues in the case. *See* Fed. R. Evid. 608(b); *United States v. Shoreline Motors*, 413 Fed. Appx. 322, 329 (2d Cir. 2011) ("[C]ross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted."); *United States v. Ramirez*, 609 F.3d 495, 499

---

[2]     For a defendant to be denied a fundamentally fair trial, the excluded or omitted evidence must have been material. *Rosario*, 839 F.2d at 925. The test for materiality is whether the omitted evidence creates a reasonable doubt that did not otherwise exist. *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

13

(2d Cir. 2010) ("Generally, the Federal Rules of Evidence bar
the admission of extrinsic evidence . . . related to the past
conduct of a witness."); *United States v. Rivera*, 273 Fed. Appx.
55, 58 (2d Cir. 2008) ("A witness may be impeached by extrinsic
proof of a prior inconsistent statement only as to matters which
are not collateral, i.e., as to those matters which are relevant
to the issues in the case and could be independently proven.")
(citation omitted); *Calderon v. Keane*, 115 Fed. Appx. 455, 458
(2d Cir. 2004) (noting that "in New York State, the use of
extrinsic evidence to impeach on collateral matters is generally
prohibited.") (citing *People v. Schwartzman*, 24 N.Y.2d 241, 247
(1969)); *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63
(2d Cir. 1969) ("[A] witness' testimony regarding collateral
matters . . . may not be refuted by calling other witnesses or
by production of extrinsic evidence.")  "The determinative
question in deciding whether extrinsic evidence contradicting a
witness's testimony is admissible is not whether the
contradicting extrinsic evidence is material or collateral, but
rather whether the assertions that the impeaching party seeks to
contradict are themselves material or collateral." *Rosario*, 839
F.2d at 925-26.  In determining whether the testimony to be
contradicted is material or collateral, New York courts have
held that "a fact is not a collateral matter if it could be
shown in evidence for any purpose independent of the

14

contradiction." *Id.* at 926 (quoting *People v. Schwartzman*, 24 N.Y.2d 241, 246 (1969)).

Additionally, as the Second Circuit has repeatedly noted, "'[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *accord People v. Duncan*, 46 N.Y.2d 74, 80 (1978).

In the instant case, the assertions that the impeaching party, petitioner, sought to contradict through the proposed testimony of Roy were Luces' and Britt's claims during cross-examination that: (1) they did not know about the drug-dealing in the building, (2) they did not deal drugs, and (3) they did not have a drug-dealing relationship with Roy or with petitioner. This testimony of Britt and Luces on cross was not relevant to the prosecution's case. The prosecution sought to establish the elements of assault, burglary, and robbery, not whether or not the complaining witnesses were drug dealers. Moreover, the testimony regarding the complaining witnesses' lack of involvement in and knowledge of drug-dealing was

15

elicited through cross-examination.  Whether true or not, these
"facts" are collateral, and therefore immaterial, to the charges
at issue.  Even if the complaining witnesses were drug dealers,
this evidence would not refute the elements of assault and
burglary.  *See United States v. Puco*, 453 F.2d 539, 542 (2d Cir.
1971) ("[W]e believe that a narcotics conviction has little
necessary bearing on the veracity of the accused as a
witness."); *Picciano v. McLoughlin*, No. 5:07-CV-0781, 2010 U.S.
Dist. LEXIS 114704, at *9 (N.D.N.Y Oct. 28, 2010) ("Drug crimes
are generally not crimes involving dishonesty or false
statement.") (citing *Lewis v. Velez*, 149 F.R.D. 474, 481-82
(S.D.N.Y. 1993)); *see also People v. Zabrocky*, 26 N.Y.2d 530,
534 (1970) ("An inquiry on cross-examination as to an immoral or
criminal act of the witness for the purpose of affecting his
credibility is an inquiry concerning a collateral matter.")
Accordingly, such testimony by Roy would have been relevant only
insofar as it undermined the complaining witnesses' credibility
as to the collateral matter of whether a prior drug dealing
relationship existed between Luces and Roy.  However, Roy's
proposed testimony had no bearing on whether or not petitioner
had a drug dealing relationship with Britt and was in Britt's
and Luces' home on August 4, 2004 for the purpose of robbing and
assaulting them.  Therefore, the court finds no error in the

trial court's decision to preclude Roy's testimony as collateral evidence.

## VI.  Whether the Error Precluded a Fundamentally Fair Trial

Even if an error under state law existed, it would not amount to the denial of the constitutional right to a fundamentally fair trial.  Where an erroneous evidentiary ruling is made and relevant evidence is excluded, it is the reviewing court's duty to determine whether the excluded evidence was material to the presentation of the defense.  *Rosario*, 839 F.2d at 925; *Taylor*, 708 F.2d at 891.  If the excluded evidence created a reasonable doubt that did not otherwise exist, a constitutional error was committed and the omission must be evaluated in the context of the entire record.  *Rosario*, 839 F.2d at 924 (citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

Viewing the entire record, it is clear that admission of defense witness Roy's testimony would not have created a reasonable doubt regarding the petitioner's guilt that did not otherwise exist.  Even without the complaining witnesses' testimony, which Roy's testimony could potentially have undermined only as to a collateral issue, there was sufficient other evidence from which the jury could conclude that petitioner was guilty beyond a reasonable doubt, including that: petitioner admitted to being present at the scene, he sustained

17

a wound during the altercation, there were no drugs or
paraphernalia found at the scene, petitioner did not seek
medical help, he fled to a different state while telling
officers that he would come into the precinct to speak with them
in a few days, he lied about his identity in Virginia, and on
the flight home he stated, in essence, that he would not go down
for this alone.

On the other hand, the complaining witnesses had
consistent accounts that were corroborated by physical evidence,
and their status as potential drug dealers would not have
related to the assault and burglary at issue.  While defense
counsel may have been able to argue, based on Roy's testimony,
that the complaining witnesses had a motive to lie, there is no
other evidence in the record suggesting that they were drug
dealers.  The "drug" money was explained as an inheritance fund,
and there is nothing to prove otherwise.  Although the state
trial court was prepared to allow Roy to testify as to whether
the inheritance was in fact discussed at the barbeque,
petitioner's counsel ultimately declined to call Roy at all.
(*See* Tr. at 501, 503.)

In light of the above, the court concludes that even
if it was error to preclude Roy's testimony, such error did not
rise to the level of constitutional magnitude, and, therefore,

18

there is no need to continue the analysis to inquire if the constitutional error was harmless.

## CONCLUSION

For the foregoing reasons, the application for a writ of habeas corpus is denied in its entirety.  Because petitioner has not made a substantial showing of the denial of any constitutional right, the court will not issue a certificate of appealability.  28 U.S.C. § 2253; *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997) (abrogated on other grounds); *Richardson v. Greene*, 497 F.3d 212, 217 (2d. Cir. 2007) (discussing the standard for issuing a certificate of appealability).  Further, the court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  The Clerk of the Court is respectfully requested to dismiss the petition, enter judgment in favor of respondent, close this case, and serve a copy of this Memorandum and Order upon petitioner and make a notation of service on the docket by December 28, 2012.

**SO ORDERED.**

Dated:      Brooklyn, New York
            December 27, 2012

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge

19